U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**

AUG 0 3 2009

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | § |
| the STATE OF CALIFORNIA, the STATE OF | § |
| DELAWARE, the STATE OF FLORIDA, the STATE | § |
| OF GEORGIA, the STATE OF HAWAII, the STATE | § |
| OF ILLINOIS, the STATE OF INDIANA, the STATE | § |
| OF LOUISIANA, the COMMONWEALTH OF | § |
| MASSACHUSETTS, the STATE OF MICHIGAN, the | § |
| STATE OF MONTANA, the STATE OF NEVADA, | § |
| the STATE OF NEW HAMPSHIRE, the STATE OF | § |
| NEW JERSEY, the STATE OF NEW MEXICO, the | § |
| STATE OF NEW YORK, the STATE OF | § |
| OKLAHOMA, the STATE OF RHODE ISLAND the | § |
| STATE OF TENNESSEE, the STATE OF TEXAS, | § |
| the COMMONWEALTH OF VIRGINIA, the STATE | § |
| OF WISCONSIN and the DISTRICT OF COLUMBIA | § |
| ex rel. EUVONKA WARREN, DYLAN L. BENNETT | § |
| and BRIAN W. STEFFENSEN, | § |
| | § |
| Plaintiffs, | § |
| | § |
| vs. | § |
| | § |
| MERCK & CO., INC., a New Jersey corporation, | § |
| | § |
| Defendant. | § |
| | § |

Case No. ___09-4083___

**FILED UNDER SEAL
PURSUANT TO 31 U.S.C.
§ 3729,** *et seq.*

**COMPLAINT FOR: VIOLATION OF THE UNITED STATES' FALSE CLAIMS ACT;
VIOLATIONS OF CALIFORNIA, DELAWARE, FLORIDA, GEORGIA, HAWAII,
ILLINOIS, INDIANA, LOUISIANA, MASSACHUSETTS, MICHIGAN, MONTANA,
NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK,
OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WISCONSIN and
the DISTRICT OF COLUMBIA FALSE CLAIMS OR EQUIVALENT ACTS**

Plaintiffs, United States of America, and twenty-two sovereign States and the District of

Columbia, *ex rel.* Euvonka Warren, Dylan L. Bennett and Brian W. Steffensen, for claims

against Defendant, complain and allege as follows:

# I. **NATURE OF ACTION**

1.     This action is brought for and on behalf of the United States of America ("United States") pursuant to the Federal False Claims Act (31 U.S.C. § 3729, *et seq.*) ("FCA") through Euvonka Warren ("Warren"), Dylan L. Bennett ("Bennett") and Brian W. Steffensen ("Steffensen") as Relators (collectively "Relators" or individually "Relator").

2.     Additionally, this action is brought for and on behalf of the following identified twenty-two sovereign States of the United States and the District of Columbia (collectively "FCA States," or singularly "FCA State"), pursuant to each respective State's or District's False Claims Act or equivalent or related law as identified herein ("State FCA(s)"), through Relators Warren, Bennett and Steffensen:

    a.     **California**: California False Claims Act, CA GOVT §12650, *et seq.*;

    b.     **Delaware**: Delaware False Claims and Reporting Act, DE ST TI 6 § 1201, *et seq.*;

    c.     **Florida**: Florida False Claims Act, FL ST § 68.081, *et seq.*;

    d.     **Georgia**: State False Medicaid Claims Act, GA CODE ANN. § 49-4-168, *et seq.*;

    e.     **Hawaii**: Hawaii False Claims Act, HI ST, § 661-22, *et seq.*;

    f.     **Illinois**: Illinois Whistleblower Reward and Protection Act, 740 ILCS 175, *et seq.*

    g.     **Indiana**: Indiana False Claims Act and Whistleblower Protection Act, Indiana Code 5-11-5.5;

    h.     **Louisiana**: Louisiana False Claims Act, LA R.S. § 46:439.1, *et seq.*;

    i.     **Massachusetts**: Massachusetts False Claims Act, MA ST 12 § 5(A), *et seq.*;

    j.     **Michigan**: Michigan Medicaid False Claims Act, M.C.L.A. § 400.601;

    k.     **Montana**: Montana False Claims Act, Mont. Code Ann. § 17-8-401, *et seq;*

-2-

l. **Nevada**: Nevada False Claims Act, NV ST § 357.010, *et seq.*;

m. **New Hampshire**: New Hampshire False Claims Act, N.H. Rev. Stat. § 167:61, *et seq.*;

n. **New Jersey**: New Jersey False Claims Act, N.J.S.A. 2A:32C-1, *et seq.*;

o. **New Mexico**: Medicaid False Claims Act, NM ST § 27-14-1, *et seq.*;

p. **New York**: New York False Claims Act, NY STATE FIN. § 187, *et seq.*;

q. **Oklahoma**: Oklahoma Medicaid False Claims Act, 63 Okl.St.Ann § 5053.1, *et seq.*;

r. **Rhode Island**: The State False Claim Act, RI ST § 9-1.1-1, *et seq.*;

s. **Tennessee**: Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181, *et seq.*;

t. **Texas**: Texas False Claims Act, Texas Medicaid Fraud Prevention Law, TX Hum. Res. § 36.001, *et seq.*;

u. **Virginia**: Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1, *et seq.*;

v. **Wisconsin**: Wisconsin False Claims for Medical Assistance Act, Wis. Code § 20.931, *et seq.*; and

w. **District of Columbia**: District of Columbia False Claims Act, DC ST § 2-308.03, *et seq.*

3. Without limitation, Relators seek monetary and multiple monetary damages, civil penalties, Relators' reasonable costs and attorneys' fees.

4. Defendant Merck & Co., Inc. ("Merck"), is a New Jersey corporation and one of the nation's largest pharmaceutical companies. In March of 2009, Merck proposed to merge with pharmaceutical manufacturer Schering-Plough in a $41 Billion transaction. The combined corporation would be the second largest pharmaceutical company in the world. The proposed deal is scheduled to close in the fourth quarter of 2009.

5. Relators aver that Defendant violated and continues to violate the FCA, 31 U.S.C. § 3729 et seq., as well as other relevant Federal and State laws, rules and regulations, including but not limited to Medicare and Medicaid regulations, CHAMPUS and TRI-CARE regulations, as well as State FCAs or equivalent statutes, rules and related laws. Defendant's violations of Federal and State laws, rules and regulations provide separate and independent predicates for additional violations of the Federal FCA and State FCAs.

6. Relators also aver that as a result of Defendant's wrongful and unlawful conduct, tens of millions of dollars were a) directly or indirectly falsely claimed and received by Defendant from, respectively, the Federal Government and each FCA State, b) were not returned or rebated to such Governments, and/or c) directly or indirectly falsely claimed and received by others who were induced or facilitated in their conduct by Defendant, all in violation of the Federal FCA and State FCAs, and all to the damage of the United States and FCA States, their political subdivisions, budgets, programs, and taxpayers.

7. The relevant time period for this action and related damages is from the earliest period allowed under, respectively, each of the Federal FCA and State FCA's up through the time of trial (the "Relevant Time Period").

## II. PARTIES, JURISDICTION AND VENUE

8. Merck is a New Jersey corporation, with its primary business office located in Whitehouse Station, New Jersey. Defendant is doing business in the State of Arkansas, and more particularly within the geographical limits of the United States District Court, Western District of Arkansas, State of Arkansas. Defendant has additional offices and numerous employees, representatives and technicians conducting business in its behalf throughout the United States.

9.      Jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331 and 1345 inasmuch as the United States is a party hereto and the claims set forth herein are founded upon laws and regulations of the United States, including the Federal False Claims Act, 31 U.S.C. § 3730 *et seq.* United States District Courts have pendant jurisdiction over any action brought under the laws of any State or the District of Columbia for the recovery of funds paid by a State or the District of Columbia if the action arises from the same transaction or occurrence as an action brought under the FCA.  31 U.S.C. § 3732 (b).  The false, wrongful and unlawful acts which form the predicate to the violations of State FCAs averred herein arise from the same transactions, occurrences, acts, facts, conduct, and/or schemes as the Federal FCA action stated herein.

10.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) inasmuch as the Defendant conducts business in the Western District of the State of Arkansas; Defendant has caused sales to occur, and requests for payments to be submitted and received, in the Western District of the State of Arkansas; Federal FCA violations have occurred and are occurring in the Western District of the State of Arkansas; and Defendant causes, enables, incentivizes, induces, encourages, offers, supports, facilitates and provides the basis for the presentation and support of false claims to and receipt of payments from the Federal Government in the Western District of the State of Arkansas.

11.      Pursuant to 31 U.S.C. § 3730(e)(4)(B) and analogous State FCA's or equivalent law, before filing this Complaint, Relators made Pre-Filing Disclosure to the United States and FCA States regarding the actions, designs and wrongdoing referred to herein.

## III. THE UNLAWFUL SCHEME

### A.    Relevant Laws and Regulations

12.    Medicare is the nation's health program for persons over 65 and the disabled.
Commencing on January 1, 2006, Medicare Part D provides comprehensive outpatient
prescription drug coverage for brand name and generic drugs according to National and Local
Coverage Determinations.  Medicare Prescription Drug Improvement and Modernization Act
2003, Pub. L. 108-173.  One hundred percent (100%) of Medicare funding is provided by the
Federal Government.

13.    Other Federal entities that offer relevant medical assistance programs that are
funded completely by the Federal Government include, but are not limited to:  The Department
of Veterans Affairs ("VA"), which provides medical assistance, including prescription drug
coverage, for persons who have been discharged from active duty service in the military, naval,
or air service; the Public Health Service ("PHS"), which provides funding, including outpatient
drug coverage, for entities such as black lung clinics, AIDS drug purchasing assistance
programs, hemophilia diagnostic treatment centers, urban Indian organizations, disproportionate
share hospitals, and other entities listed in § 3403(a)(4) of the Public Health Service Act; and the
Department of Defense ("DOD"), which administers the TRI-CARE health care program for
active duty and retired members of the uniformed services, their families, and survivors.
TRI-CARE benefits include comprehensive prescription drug coverage.  Other Federal health
programs impacted by the wrongdoing include, but are not limited to, the Railroad Retirement
Medicare Program (the Railroad Retirement Act of 1974, 45U.S.C.A. § 231 *et seq.*), Indian
Health Services (42 U.S.C.A. § 2002 *et seq.* and 38 U.S.C.A. § 8126), the Federal Employees
Heath Benefit Program administered by the Office of Personal Management pursuant to

5 U.S.C.A. § 8901 *et seq.* and the State Legal Immigration Assistance Grants pursuant to 8 U.S.C.A. § 1255A.

14.     Medicaid is the nation's medical assistance program for the needy, the medically-needy aged, blind, and disabled, and families with dependent children. 42 U.S.C. §§ 1396-1396v. Medicaid is largely administered by the states and funded by a combination of Federal and State funds. Well over 50% of aggregate national Medicaid funding is provided by the Federal Government, although the exact federal percentage for each state is different. Among other forms of medical assistance, the Medicaid programs cover outpatient prescription drugs. 42 U.S.C. §§ 1396a(10)(A) and 1396d(a)(12).

15.     Medicaid is administered by the following relevant FCA State agencies: California Department of Health Care Services; Delaware Department of Health and Social Services; Florida Agency for Healthcare Administration; Georgia Department of Community Health; Hawaii Department of Human Services; Illinois Department of Health and Family Services; Indiana Family and Social Services Agency; Louisiana Medicaid Bureau of Health Services Financing Agency; Massachusetts Division of Medical Assistance; the Michigan Medicaid Agency; Montana Department of Health and Human Services; Nevada Division of Healthcare Financing; New Hampshire Medicaid Services; New Jersey Department of Medical Assistance and Healthcare Services; New Mexico Human Services Department; New York Department of Health; Oklahoma Health Care Authority; Rhode Island Department of Human Services; the TennCare Agency; Texas Health and Human Services Commission; Virginia Department of Medical Assistance Services; Wisconsin Department of Health and Family Services; and District of Columbia Department of Health.

### 1.     Best Price Requirements

16.     The U.S. Government finances more prescription drug purchases than any other entity in the world, and the Medicare and Medicaid programs are the largest of all the Federal Government's drug subsidy programs. Medicare is administered by the Federal Government while Medicaid is administered on a state-by-state basis, pursuant to Federal guidelines. Both the Medicare and Medicaid programs are designed to insure that the Federal and State Governments receive the appropriately low price on "branded," "single-source," and/or "innovator multiple-source" prescription drugs justified by the unparalleled volume of drugs purchased by the Federal and State Governments through Medicare, Medicaid and other relevant programs.

17.     Receipt by Federal and State Governments of the appropriate low price for a prescription drug is to be assured through quarterly reports filed with and rebates given by the drug manufacturer to the Governments as required by relevant law, rules and/or and regulations. 42 U.S.C. Section 1396r. The amount of the quarterly rebate to the Governments is determined by first calculating the Average Manufacturer Price ("AMP"). AMP is "the average price paid to the manufacturer for the drug in the United States by wholesalers for drugs distributed to the retail pharmacy class of trade." 42 U.S.C. Section 1396r-8(k)(l)(A). Basically, AMP is calculated as net quarterly sales divided by the number of units sold. Calculation of AMP for any given quarter is also adjusted for all returns, rebates, charge backs, customary prompt pay discounts and other adjustments affecting actual price relating to sales in that quarter. 42 U.S.C. 1396r-9(k)9l). Once the quarterly AMP is determined, the amount of the quarterly rebate is determined by calculating the greater of (a) AMP x 15.1% or (b) AMP minus the manufacturer's "Best Price." 42 U.S.C. 1396r-8(c)(1)(A).

18.     While Government regulations set forth specific calculations that are to be performed to determine "Best Price," it is generally defined as "the lowest price available from the manufacturer" which must take into account "cash discounts, free goods that are contingent on any purchase requirement, volume discounts, and [non-exempted] rebates." 42 U.S.C. § 1396r-8(c)(1)(C)(I)-(ii). Federal and State Governments depend on accurate reporting by drug manufacturers of their AMD and their Best Price in order to assure that the Governments receive the appropriate quarterly rebate.

19.     Generally, if a drug manufacturer has given any customer a larger discount, whether by way of price, or through discounts, rebates or free products, the Federal and State Governments must also receive that same lowest or "best price."

## B.    A Brief Description of the Prescription Drug Cozaar

20.     The prescription drug Cozaar is an angiotensin II receptor antagonist used in the treatment of hypertension. It blocks the hormone angiotensin. This helps keep blood vessels from narrowing, which may lower blood pressure, improve blood flow and assist the kidneys in eliminating extra fluid. The drug is an oral medication and comes in three strengths, 25, 50 and 100 milligram tablets.

21.     For the purposes of the relevant laws, rules and regulations, set forth above, Cozaar is considered to be a patented, "branded," and/or "single-source" prescription drug.

22.     Defendant Merck sold more than $3.3 Billion of Cozaar in 2007 and $3.5 Billion in 2008. Cozaar currently sells at a retail price of about $1.90 for a 25 mg pill, $2.10 for a 50 mg pill and $2.90 for a 100 mg pill.

## C. The False Claims on Government Programs

23.     Defendant violated, respectively, the Federal FCA and/or State FCAs or

equivalent statutes by providing certain favored entities with lower prices for prescription drugs

than were provided by Defendant to Federal and State Governments through Medicare, Medicaid

and other relevant programs, and/or by actively promoting and entering into relationships,

arrangements and/or understandings by which certain favored entities were provided with lower

prices for prescription drugs than were provided by Defendant to Federal and State Governments

through Medicare, Medicaid and other relevant Federal and State programs.  Relators' also

allege that Defendant failed to properly and accurately report the information required (such as

"Best Price"), and fully rebate, to the Federal and State Governments, the sums required

pursuant to relevant law, rule and/or regulation in connection with the sale of certain prescription

drugs.  An example of such a drug is Defendant Merck's Cozaar.

## IV.    RELATORS' ADDITIONAL DIRECT AND INDEPENDENT KNOWLEDGE

24.     Relator Euvonka Warren ("Relator" or "Warren"), is a resident of Los Angeles,

California.  Beginning in Spring 1999, Relator Warren was employed by Pfizer, Inc., and then by

Organon Pharmaceuticals, Inc. as, respectively, a Health Care Representative and a Sales

Representative with responsibilities for marketing and sales of certain prescription drugs to

physicians and hospitals located in Southern California.

25.     In Spring of 2002, Relator Warren began employment with Defendant Merck as a

Hospital Sales Representative.  In this position she was specifically given responsibilities to

retain Defendant Merck's already existing client base, to increase Merck product usage, to assist

in placing Merck drugs on hospital formularies, and to build relationships of trust and confidence

between Merck and hospital key-personnel and decision-makers.  Relator Warren continued to

work as a Hospital Representative for Merck through March, 2009, when she was laid-off as part of a larger reduction-in-force.

26.     During the approximately seven years she worked for Defendant Merck, Warren served as a Hospital Sales Representative to a variety of hospitals and medical institutions located in Southern California including L.A. County/USC Medical Center, King/Drew Medical Center, White Memorial Hospital and USC Medical Center. During her tenure at Merck she marketed and sold a variety of Merck products to those hospitals, medical centers and clinics including Zocor, Fosomax, Singulair, Januvia, Hyzaar and Cozaar.

27.     In approximately the first half of 2007, Relator Warren had discussions with at least two separate employees of the L.A. County/USC Medical Center Pharmacy who each independently revealed to her that the center was engaging in a practice whereby the pharmacists would automatically substitute multiple 25 mg Cozaar tablets for higher dosage tablets (such as prescriptions for 50 or 100 mg Cozaar tablets). For example, instead of providing one 100 mg Cozaar tablet for a patient on such a dosage, the pharmacy would automatically dispense four 25 mg Cozaar tablets. Relator Warren was told by these pharmacy employees that this practice was a result of the medical center's ability to obtain the 25 mg Cozaar tablets at a far steeper discount than it received for other dosages of the same drug. Warren currently recollects that she also learned from one or more of these pharmacists that the price at which L.A. County/USC Medical Center purchasing the 25 mg Cozaar tablets from Merck was approximately .05 cents each. The pharmacy employees chided Warren for not knowing what her company was charging them for different doses of the very drug she was attempting to market to them. These exchanges frustrated Warren. Moreover, this information surprised Relator and seemed dissonant with her basic understanding of Merck's marketing and pricing practices.

-11-

28.     Accordingly, sometime thereafter, approximately during spring or summer of 2007, Relator Warren inquired of her superiors at Merck of such practice. In response, she was told by Sal Rubino, her manager at Merck, that L.A. County/USC Medical Center was, indeed, receiving 25 mg tablets of Cozaar for approximately .05 cents each. Subsequently, Dan Rodriguez, Merck's National Account Representative to the L.A. County/USC Medical Center, also confirmed the .05 cents per 25 mg tablet price. In addition, it is Relator Warren's recollection that during these or other conversations, either Sal Rubino or Dan Rodriguez told her that Kaiser Permanente had received a special arrangement with Defendant Merck by which Merck sold to Kaiser 25 mg tablets of Cozaar for the low price of .05 cents per pill.

29.     Relator Warren was also told that sometime after Merck had been selling Cozaar to Kaiser Permanente at the above-stated price, L.A. County had discovered this arrangement with Kaiser and had demanded to receive the same low price for Cozaar from Defendant Merck. Thereafter Defendant Merck gave L.A. County/USC Medical Center the same .05 cent deal on 25 mg Cozaar tablets that had previously been given to Kaiser Permanente.

30.     As a consequence of multiple conversations concerning pricing, Relator Warren also came to understand that other hospitals and/or medical centers across the United States sometimes received similarly low pricing on Merck prescription drugs *other than Cozaar*, and that, as a result of its discovery of the secret arrangement between Merck and Kaiser regarding Cozaar, L.A. County/USC Medical Center thereafter expected that it would receive from Merck the same low prices for the purchase of such *other* prescription drugs.

31.     Relator Warren also has direct, personal and professional experience in and knowledge of certain wrongful conduct generally set forth herein. If necessary, Relator Warren is an original source under the law.

32.     Based upon the personal knowledge set forth above, and the other matters identified herein, Relators' aver that Defendant Merck and others violated the Federal and State FCAs by causing, inducing, facilitating and participating in the submission, and the support, of claims for reimbursement of product that were not payable under applicable laws, rules and/or regulations. Additionally, Relators' contend that Defendant Merck and others violated Federal and State FCAs by engaging in a practice, and causing, inducing and/or facilitating certain hospitals, medical centers, clinics and other providers across the United States including, but not limited to, Kaiser Permanente and L.A. County/USC Medical System to engage in a practice, through which the Federal and State Governments were not receiving the lower price for certain prescription drugs, such as Cozaar, as is required by relevant law, rule and/or regulation. Relators' also allege that Defendant failed to properly and accurately report the information required (such as "Best Price"), and fully rebate, to the Federal and State Governments, the sums required, pursuant to relevant law, rule and/or regulation in connection with the sale of certain prescription drugs of which Cozaar is an example.

## V. BRIEF RELEVANT INFORMATION ABOUT KAISER PERMANENTE

33.     Kaiser Permanente was the nation's first pre-paid medical coverage program and now serves well over eight million clients through 35 Medical Centers and 431 Medical Offices located in approximately 10 States. In 2008 it had $40.3 Billion in revenue and more than 167,000 employees. Kaiser Permanente, its hospitals, medical centers, medical offices, clinics, labs and/or other medical facilities are not entitled to receive 42 U.S.C. 256b Section 340(b) pricing.

## VI. CLAIMS AND PRAYERS FOR RELIEF

## COUNT ONE: VIOLATION OF THE FEDERAL
## FALSE CLAIMS ACT 31 U.S.C. § 3729(a)(1),(a)(2) & (a)(7)

34.    Relators repeat and reallege each and every averment contained in Paragraphs 1 through 33 of this Complaint as if iterated herein.

35.    Defendant has violated the provisions of the False Claims Act, 31 U.S.C. § 3729(a) by:

(a)    Knowingly presenting or causing to be presented to the United States Government, directly or indirectly, false or fraudulent claims to be paid or approved, directly or indirectly, by the United States Government (31 U.S.C. § 3729(a)(1));

(b)    Knowingly making, using, or causing to be made or used, or presenting false records or statements and/or false certifications, to obtain contracts/subcontracts and/or the payment of false or fraudulent claims to be paid or approved by the United States Government (31 U.S.C. § 3729(a)(2));

(c)    Knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government (31 U.S.C. § 3729(a)(7));

36.    The United States Government, upon presentation of such claims for payment, whether directly or indirectly, remitted payment despite the false nature of such claims. The United States Government was unaware of Defendant's wrongful conduct or the falsity of the records, concealments, statements and claims made by Defendant, and its agents, employees and others, and as a result thereof, has paid and continues to pay tens of millions of dollars to Defendant that it would not otherwise have paid, and/or has failed to receive tens of millions of dollars in rebates from Defendant that it is owed pursuant to relevant law, rule or regulation

-14-

37.     Pursuant to 31 U.S.C. § 3729(a), Defendant is liable to the United States Government for a civil penalty of not less than $5,500, and not more than $11,000 for each violation of the FCA committed by Defendant.

38.     By reason of Defendant's conduct, the United States Government has further sustained damages, and will yet sustain damages up to the date of trial in an amount yet to be determined.  Pursuant to 31 U.S.C. § 3729(a) Defendant is liable for three times the amount of all such damages sustained by the United States Government.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)     that by reason of the aforementioned violations of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than three times the amount of damages sustained by the United States because of Defendant's conduct, plus a civil penalty of not less than $5,500, nor more than $11,000, for each and every such violation;

(b)     that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3729 *et seq.*, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT TWO: VIOLATION OF THE
## CALIFORNIA FALSE CLAIMS ACT

39.     Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

40.     This is a State *qui tam* action brought by Relators for and on behalf of the State of California and on behalf of themselves as individuals to recover treble damages and civil penalties under the California False Claims Act, CA GOVT § 12650 *et seq.*

41.     Defendant violated and continues to violate CA GOVT § 12650 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of California:

(a)     knowingly presenting, or causing to be presented, to an officer or employee of the State of California or of any political division thereof, a false claim for payment or approval;

(b)     knowingly making, using, or causing to be made or used a false record or statement to get a false claim paid or approved by the State of California or by any political subdivision;

(c)     knowingly making, using, or causing to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or to any political subdivision; and/or

(d)     failing to disclose the false claim to the State of California or the political subdivision within a reasonable time after discovery of the false claim while being a beneficiary of an inadvertent submission of a false claim to the State of California or a political subdivision.

42.     California's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealments, falsity of the records, statements and claims made by Defendant and others and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of California that it would not otherwise have paid and continues not to receive all appropriate rebates required by relevant law, rule and/or regulation.

-16-

43.     The State of California, its political subdivisions and the California Medicaid and other relevant programs have been damaged by Defendant's conduct and by the payment of false and fraudulent claims and/or by the wrongful failure to receive monies required to be returned or rebated pursuant to relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)     that by reason of the aforementioned conduct and violations of the California False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that California has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of CA GOVT §12650 et. seq.;

(b)     that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to CA GOVT § 12650 *et seq.*, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT THREE: VIOLATION OF THE DELAWARE
## FALSE CLAIMS AND REPORTING ACT

44.     Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

45.     This is a State *qui tam* action brought by Relators for and on behalf of the State of Delaware and on behalf of themselves as individuals to recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, DE ST TI 6 § 1201 *et seq.*

46.    Defendant violated and continues to violate DE ST TI 6 § 1201 *et seq.*, and Medicare/Medicaid laws and regulations by doing any or all of the following within the State of Delaware:

(a)    knowingly presenting, or causing to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval;

(b)    knowingly making, using or causing to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved;

(c)    knowingly making, using, or causing to be made or used a false record or statement to conceal, avoid, increase or decrease an obligation to pay or transmit money or property to or from the Government; and/or

(d)    having possession, custody or control of property or money used or to be used by the Government and, intending to defraud the Government or willfully to conceal the property, delivers or causes to be delivered less property than the amount for which the person receives a certificate or receipt.

47.    Delaware's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Delaware that it would not otherwise have paid, and continues not to receive those monies and/or rebates required by relevant law, rule and/or regulation.

48.    The Delaware Medicaid program has been damaged by Defendant's conduct by the payment of false and fraudulent claims and by its failure to receive all appropriate monies and/or rebates.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)     that by reason of the aforementioned violations of the Delaware False Claims and Reporting Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Delaware has sustained because of Defendant's conduct, plus a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of DE ST Tl 6 § 1291 et. seq.;

(b)     that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to DE ST Tl 6 § 1201 *et seq.*, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT FOUR: VIOLATION OF THE
## FLORIDA FALSE CLAIMS ACT

49.     Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

50.     This is a State *qui tam* action brought by Relators for and on behalf of the State of Florida and on behalf of themselves as individuals to recover treble damages and civil penalties under the Florida False Claims Act, FL ST § 68.081 *et seq.*

51.     Defendant violated and continues to violate FL ST § 68.081 *et seq.*, and Medicare/Medicaid laws, rules and/or regulations by doing any or all of the following within the State of Florida:

(a)     knowingly presenting, or causing to be presented, to an officer or employee of a Government agency a false or fraudulent claim for payment or approval;

(b)     knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by a Government agency; and/or

(c)     knowingly making, using, or causing to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to a Government agency.

52.     Florida's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Florida that it would not otherwise have paid and continues not to receive all appropriate monies and rebates as required by relevant law, rule and/or regulation.

53.     The Florida Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)     that by reason of the aforementioned violations of the Florida False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Florida has sustained because of Defendant's conduct, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of FL ST § 68.081 *et seq.*;

(b)     that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to FL ST § 68.081 *et seq.*, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT FIVE: VIOLATION OF THE
## GEORGIA STATE FALSE MEDICAID CLAIMS ACT

54.     Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

55.     This is a State *qui tam* action brought by Relators for and on behalf of the State of Georgia and on behalf of themselves as individuals to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, GA CODE ANN. § 49-4-168 *et seq.*

56.     Defendant violated and continues to violate GA CODE ANN. § 49-4-168 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of Georgia:

(a)     knowingly presenting or causing to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

(b)     knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program; and/or

(c)     knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay, repay or transmit money or property to the State of Georgia.

57.     Georgia's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the

State of Georgia that it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

58.     The Georgia Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)     that by reason of the aforementioned violations of the Georgia State False Medicaid Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Georgia has sustained because of Defendant's conduct, plus a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each violation of GA CODE ANN. § 49-4-168 *et seq.*;

(b)     that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to GA CODE ANN. § 49-4-168 *et seq.*, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT SIX: VIOLATION OF THE
## HAWAII FALSE CLAIMS ACT

59.     Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

60.     This is a State *qui tam* action brought by Relators for and on behalf of the State of Hawaii and on behalf of themselves as individuals to recover treble damages and civil penalties under the Hawaii False Claims Act, HI ST § 661-21 *et seq.*

61.     Defendant violated and continues to violate HI ST § 661-21 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of Hawaii:

(a)     knowingly presenting, or causing to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

(b)     knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

(c)     knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state; and/or

(d)     becoming a beneficiary of an inadvertent submission of a false claim to the State, and subsequently discovering the falsity of the claim, and failing to disclose the false claim to the State within a reasonable time after discovery of the false claim.

62.     Hawaii's Medicaid program was unaware of Defendant's wrongful conduct regarding the falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Hawaii that it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

63.     The Hawaii Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a) that by reason of the aforementioned violations of the Hawaii False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Hawaii has sustained because of Defendant's conduct, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of HI ST § 661-21 *et seq.*;

(b) that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to HI ST § 661-21 *et seq.*, and/or any other applicable provision of law;

(c) that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d) that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT SEVEN: VIOLATION OF THE ILLINOIS
## WHISTLEBLOWER REWARD AND PROTECTION ACT

64. Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

65. This is a State *qui tam* action brought by Relators for and on behalf of the State of Illinois and on behalf of themselves as individuals to recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq.*

66. Defendant violated and continues to violate 740 ILCS 175 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of Illinois:

        (a)     knowingly presenting, or causing to be presented, to an officer or employee of the State of a member of the Guard a false or fraudulent claim for payment or approval;

        (b)     knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State; and/or

        (c)     knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State.

67.     Illinois' Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Illinois that it would not otherwise have paid and continues not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

68.     The Illinois Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

        (a)     that by reason of the aforementioned violations of the Illinois Whistleblower Reward and Protection Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Illinois has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of 740 ILCS 175 *et seq.*;

        (b)     that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to 740 ILCS 175 *et seq.*, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT EIGHT: VIOLATION OF THE INDIANA STATE
## FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT

69.     Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

70.     This is a State *qui tam* action brought by Relators for and on behalf of the State of Indiana and on behalf of themselves as individuals to recover treble damages and civil penalties under the Indiana False Claims Act, IC § 5-11-5.5 *et seq.*

71.     Defendant violated and continues to violate IC § 5-11-5.5 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of Indiana:

(a)     knowingly presenting a false claim to the state for payment or approval;

(b)     knowingly making or using a false record or statement to obtain payment or approval of a false claim from the state;

(c)     knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state; and/or

(d)     causing or inducing another person to perform an act described above.

72.     Indiana's Medicaid program was unaware of Defendant's wrongful conduct regarding the falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of

-26-

Indiana that it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

73. The Indiana Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a) that by reason of the aforementioned violations of the Indiana False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Indiana has sustained because of Defendant's conduct, plus a civil penalty of not less than $5,000 for each violation of IC § 5-11-5.5 *et seq.*;

(b) that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to IC § 5-11-5.5 *et seq.*, and/or any other applicable provision of law;

(c) that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d) that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT NINE: VIOLATION OF THE LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW

74. Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

75. This is a State *qui tam* action brought by Relators for and on behalf of the State of Louisiana and on behalf of themselves as individuals to recover treble damages and civil

penalties under the Louisiana Medical Assistance Programs Integrity Law, LA R.S. § 46:439.1 *et seq.*

76.      Defendant violated and continues to violate LA R.S. § 46:439.1 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of Louisiana:

(a)      knowingly presenting or causing to be presented a false or fraudulent claim; and/or

(b)      knowingly engaging in misrepresentation to obtain, or attempt to obtain, payment from medical assistance programs funds.

77.      Louisiana's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Louisiana it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

78.      The Louisiana Medicaid program has been damaged by Defendant's conduct and by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)      that by reason of the aforementioned violations of the Louisiana Medical Assistance Programs Integrity Law that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Louisiana has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of LA R.S. § 46:439.1 *et seq.*;

(b)      that Relators, as Qui Tam Plaintiffs, be awarded the maximum amount allowed pursuant to LA R.S. § 46:439.1 *et seq.*, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court

deems just and proper.

## COUNT TEN: VIOLATION OF THE
## MASSACHUSETTS FALSE CLAIMS ACT

79.     Relators repeat and reallege each allegation contained in paragraphs 1 through 33

above as if fully set forth herein.

80.     This is a State *qui tam* action brought by Relators for and on behalf of the State of

Massachusetts and on behalf of themselves as individuals to recover treble damages and civil

penalties under the Massachusetts False Claims Act, MA ST 12 § 5(A) *et seq.*

81.     Defendant violated and continues to violate Gen. MA ST 12 § 5(A) *et seq.*, and

Medicare/Medicaid laws and regulations by doing all or any of the following within the State of

Massachusetts:

(a)     knowingly presenting, or causing to be presented, a false or fraudulent

claim for payment or approval;

(b)     knowingly making, using, or causing to be made or used, a false record or

statement to obtain payment or approval of a claim by the Commonwealth or any political

subdivision thereof;

(c)     knowingly making, using, or causing to be made or used, a false record or

statement to conceal, avoid, or decrease an obligation to pay or to transmit money or property to

the Commonwealth or political subdivision thereof; and/or

(d)     becoming a beneficiary of an inadvertent submission of a false claim to

the commonwealth or political subdivision thereof, and subsequently discovering the falsity of

the claim, and failing to disclose the false claim to the Commonwealth or political subdivision within a reasonable time after discovery of the false claim.

82.    Massachusetts' Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Massachusetts that it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

83.    The Massachusetts Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)    that by reason of the aforementioned violations of the Massachusetts False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Massachusetts has sustained because of Defendant's conduct, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of MA ST 12 § 5(A) *et seq.*;

(b)    that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to MA ST 12 § 5(A) *et seq.*, and/or any other applicable provision of law;

(c)    that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)    that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT ELEVEN: VIOLATION OF THE
## MICHIGAN MEDICAID FALSE CLAIMS ACT

84.     Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

85.     This is a State *qui tam* action brought by Relators for and on behalf of the State of Michigan and on behalf of themselves as individuals to recover treble damages and civil penalties under the Michigan Medicaid False Claims Act, M.C.L.A. § 400.601 *et seq.*

86.     Defendant violated and continues to violate M.C.L.A. § 400.601 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of Michigan:

        (a)     knowingly making or causing to be made a false statement or false representation of a material fact in an application for medicaid benefits;

        (b)     knowingly making or causing to be made a false statement or false representation of a material fact for use in determining rights to a medicaid benefit; and/or

        (c)     having knowledge of the occurrence of an event affecting a person's initial or continued right to receive a medicaid benefit or the initial or continued right of any other person on whose behalf the person has applied for or is receiving a benefit, and concealing or failing to disclose that event with intent to obtain a benefit to which the person or any other person is not entitled or in an amount greater than that to which the person or any other person is entitled.

87.     Michigan's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the

State of Michigan that it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

88.     The Michigan Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)     that by reason of the aforementioned violations of the Michigan Medicaid False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Michigan has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of M.C.L.A. § 400.601 *et seq.*;

(b)     that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to M.C.L.A. § 400.601 et seq, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT TWELVE: VIOLATION OF THE
## MONTANA FALSE CLAIMS ACT

89.     Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

90.     This is a State *qui tam* action brought by Relators for and on behalf of the State of Montana and on behalf of themselves as individuals to recover treble damages and civil penalties under the Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*

91.     Defendant violated and continues to violate Mont. Code Ann. § 17-8-401 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of Montana:

(a)     knowingly presenting or causing to be presented to an officer or employee of the governmental entity a false claim for payment or approval;

(b)     knowingly making, using, or causing to be made or used a false record or statement to get a false claim paid or approved by the governmental entity;

(c)     knowingly making, using, or causing to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the governmental entity or its contractors; and/or

(d)     becoming a beneficiary of an inadvertent submission of a false claim to the governmental entity, subsequently discovering the falsity of the claim and failing to disclose the false claim to the governmental entity within a reasonable time after discovery of the false claim.

92.     Montana's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Montana that it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

93.     The Montana Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

-33-

(a)   that by reason of the aforementioned violations of the Montana False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Montana has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of Mont. Code Ann. § 17-8-401 *et seq.*;

(b)   that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to Mont. Code Ann. § 17-8-401 *et seq.*, and/or any other applicable provision of law;

(c)   that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)   that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT THIRTEEN: VIOLATION OF THE
## NEVADA FALSE CLAIMS ACT

94.   Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

95.   This is a State *qui tam* action brought by Relators for and on behalf of the State of Nevada and on behalf of themselves as individuals to recover treble damages and civil penalties under the Nevada False Claims Act, NV ST § 357.010 *et seq.*

96.   Defendant violated and continues to violate NV ST § 357.010 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of Nevada:

(a)   knowingly presenting or causing to be presented a false claim for payment or approval;

-34-

(b)    knowingly making or using, or causing to be made or used, a false record or statement to obtain payment or approval of a false claim;

(c)    knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state or a political subdivision; and/or

(d)    becoming a beneficiary of an inadvertent submission of a false claim and, after discovering the falsity of the claim, failing to disclose the falsity to the state or political subdivision within a reasonable time.

97.    Nevada's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Nevada that it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

98.    The Nevada Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)    that by reason of the aforementioned violations of the Nevada False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Nevada has sustained because of Defendant's conduct, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of NV ST § 357.010 *et seq.*;

(b)    that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to NV ST § 357.010 *et seq.*, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief that this Court deems just and proper.

## COUNT FOURTEEN: VIOLATION OF THE
## NEW HAMPSHIRE FALSE CLAIMS ACT

99.     Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

100.     This is a State *qui tam* action brought by Relators for and on behalf of the State of New Hampshire and on behalf of themselves as individuals to recover treble damages and civil penalties under the New Hampshire False Claims Act, N.H. Rev. Stat. § 167:61 *et seq.*

101.     Defendant violated and continues to violate N.H. Rev. Stat. § 167:61 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of New Hampshire:

(a)     knowingly making, presenting or causing to be made or presented, with intent to defraud, any false or fraudulent claim for payment for any good, service, or accommodation;

(b)     knowingly making, presenting, or causing to be made or presented, with intent to defraud, any false or fraudulent statement or representation for use in determining rights to benefits or payments;

(c)     knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the department; and/or

(d)  knowingly making, presenting, or causing to be made or presented, with intent to defraud, any false or fraudulent report or filing which is or may be used in computing or determining a rate of payment for goods, services, or accommodations; or making, presenting, or causing to be made or presented any false or fraudulent statement or representation in connection with any such report or filing;

102.  New Hampshire's Medicaid program was unaware of Defendant's wrongful conduct, as well as the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of New Hampshire that it would not otherwise have paid and continues not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

103.  The New Hampshire Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)  that by reason of the aforementioned violations of the New Hampshire False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that New Hampshire has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of N.H. Rev. Stat. § 167:61 *et seq.*;

(b)  that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to N.H. Rev. Stat. § 167:61 *et seq.*, and/or any other applicable provision of law;

(c)  that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

-37-

(d)    that Plaintiffs and Relators have such other and further relief as this Court

deems just and proper.

## COUNT FIFTEEN: VIOLATION OF THE
## NEW JERSEY FALSE CLAIMS ACT

104.    Relators repeat and reallege each allegation contained in paragraphs 1 through 33

above as if fully set forth herein.

105.    This is a State *qui tam* action brought by Relators for and on behalf of the State of

New Jersey and on behalf of themselves as individuals to recover treble damages and civil

penalties under the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.*

106.    Defendant violated and continues to violate N.J.S.A. 2A:32C-1 *et seq.*, and

Medicare/Medicaid laws and regulations by doing all or any of the following within the State of

New Jersey:

(a)    knowingly presenting or causing to be presented to an employee, officer

or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false claim

for payment or approval;

(b)    knowingly making, using, or causing to be made or used a false record or

statement to get a false claim paid or approved by the State; and/or

(c)    knowingly making, using, or causing to be made or used a false record or

statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the

State.

107.    New Jersey's Medicaid program was unaware of Defendant's wrongful conduct

regarding the concealment, falsity of the records, statements and claims made by Defendant and

as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the

-38-

State of New Jersey that it would not otherwise have paid and continues not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

108. The New Jersey Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a) that by reason of the aforementioned violations of the New Jersey False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that New Jersey has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of N.J.S.A. 2A:32C-1 *et seq.*;

(b) that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to N.J.S.A. 2A:32C-1 *et seq.*, and/or any other applicable provision of law;

(c) that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d) that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT SIXTEEN: VIOLATION OF THE
## NEW MEXICO MEDICAID FALSE CLAIMS ACT

109. Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

110. This is a State *qui tam* action brought by Relators for and on behalf of the State of New Mexico and on behalf of themselves as individuals to recover treble damages and civil penalties under the New Mexico False Claims Act, NM ST § 27-14-1 *et seq.*

111.    Defendant violated and continues to violate NM ST § 27-14-1 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of New Mexico:

(a)     presenting, or causing to be presented, to the state a claim for payment under the medicaid program knowing that such claim is false or fraudulent;

(b)     presenting, or causing to be presented, to the state a claim for payment under the medicaid program knowing that the person receiving a medicaid benefit or payment is not authorized or is not eligible for a benefit under the medicaid program;

(c)     making, using or causing to be made or used a record or statement to obtain a false or fraudulent claim under the medicaid program paid for or approved by the state knowing such record or statement is false; and/or

(d)     knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state.

112.    New Mexico's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of New Mexico that it would not otherwise have paid and continues not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

113.    The New Mexico Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

-40-

(a)    that by reason of the aforementioned violations of the New Mexico

Medicaid False Claims Act that this Court enter judgment in Plaintiffs' favor and against

Defendant in an amount equal to not less than two times and not more than three times the

amount of damages that New Mexico has sustained because of Defendant's conduct, plus a civil

penalty of not more than $10,000 for each violation of NM ST § 27-14-1 *et seq.*;

(b)    that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount

allowed pursuant to NM ST § 27-14-1 *et seq.*, and/or any other applicable provision of law;

(c)    that Relators be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

(d)    that Plaintiffs and Relators have such other and further relief as this Court

deems just and proper.

## COUNT SEVENTEEN: VIOLATION OF THE
## NEW YORK FALSE CLAIMS ACT

114.    Relators repeat and reallege each allegation contained in paragraphs 1 through 33

above as if fully set forth herein.

115.    This is a State *qui tam* action brought by Relators for and on behalf of the State of

New York and on behalf of themselves as individuals to recover treble damages and civil

penalties under the New York False Claims Act, NY STATE FIN. § 187 *et seq.*

116.    Defendant violated and continues to violate NY STATE FIN. § 187 *et seq.*, and

Medicare/Medicaid laws and regulations by doing all or any of the following within the State of

New York:

(a)    knowingly presenting, or causing to be presented, to any employee, officer

or agent of the state or a local government, a false or fraudulent claim for payment or approval;

(b)      knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a local government;

(c)      knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or a local government; and/or

(d)      knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or a local government.

117.    New York's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of New York that it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

118.    The New York Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)      that by reason of the aforementioned violations of the New York False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that New York has sustained because of Defendant's conduct, plus a civil penalty of not more than $12,000 for each violation of NY STATE FIN. § 187 *et seq.*;

(b)      that Relators, as *Qui Tam* Plaintiffs, be awarded the maximum amount allowed pursuant to NY STATE FIN. § 187 *et seq.*, and/or any other applicable provision of law;

-42-

(c)     that Relators be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court

deems just and proper.

## COUNT EIGHTEEN: VIOLATION OF THE
## OKLAHOMA MEDICAID FALSE CLAIMS ACT

119.    Relators repeat and reallege each allegation contained in paragraphs 1 through 33

above as if fully set forth herein.

120.    This is a State *qui tam* action brought by Relators for and on behalf of the State of

Oklahoma and on behalf of themselves as individuals to recover treble damages and civil

penalties under the Oklahoma Medicaid False Claims Act, 63 Okl.St.Ann. § 5053.1 *et seq.*

121.    Defendant violated and continues to violate 63 Okl.St.Ann. § 5053.1 *et seq.*, and

Medicare/Medicaid laws and regulations by doing all or any of the following within the State of

Oklahoma:

(a)     knowingly presenting, or causing to be presented, to an officer or an

employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

(b)     knowingly making, using, or causing to be made or used, a false record or

statement to get a false or fraudulent claim paid or approved by the state; and/or

(c)     knowingly making, using, or causing to be made or used, a false record or

statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the

state.

122.    Oklahoma's Medicaid program was unaware of Defendant's wrongful conduct

regarding the concealment, falsity of the records, statements and claims made by Defendant and

as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the

State of Oklahoma that it would not otherwise have paid and continues not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

123.    The Oklahoma Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)     that by reason of the aforementioned violations of the Oklahoma Medicaid False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Oklahoma has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of 63 Okl.St.Ann. § 5053.1 *et seq.*;

(b)     that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to 63 Okl.St.Ann. § 5053.1 *et seq.*, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT NINETEEN: VIOLATION OF THE
## RHODE ISLAND FALSE CLAIMS ACT

124.    Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

-44-

125.    This is a State *qui tam* action brought by Relators for and on behalf of the State of Rhode Island and on behalf of themselves as individuals to recover treble damages and civil penalties under the Rhode Island False Claims Act, RI ST § 9-1.1-1 *et seq.*

126.    Defendant violated and continues to violate RI ST § 9-1.1-1 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of Rhode Island:

    (a)    knowingly presenting, or causing to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;

    (b)    knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state; and/or

    (c)    knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state.

127.    Rhode Island's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Rhode Island that it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

128.    The Rhode Island Medicaid program has been damaged by Defendant's conduct and by the payment of false and fraudulent claims.

    WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

    (a)    that by reason of the aforementioned violations of the Rhode Island False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an

amount equal to not less than two times and not more than three times the amount of damages that Rhode Island has sustained because of Defendant's conduct, plus a civil penalty of not more than \$10,000 for each violation of RI ST § 9-1.1-1 *et seq.*;

(b)    that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to RI ST § 9-1.1-1 *et seq.*, and/or any other applicable provision of law;

(c)    that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)    that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT TWENTY: VIOLATION OF THE
## TENNESSEE MEDICAID FALSE CLAIMS ACT

129.    Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

130.    This is a State *qui tam* action brought by Relators for and on behalf of the State of Tennessee and on behalf of themselves as individuals to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*

131.    Defendant violated and continues to violate Tenn. Code Ann. § 71-5-181 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the State of Tennessee:

(a)    knowingly presenting, or causing to be presented, to the state of Tennessee a claim for payment under the Medicaid program knowing such claim is false or fraudulent;

-46-

(b) making, using, or causing to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false;

(c) knowingly making, using, or causing to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or to any political subdivision; and/or

(d) making, using, or causing to be made or used, a record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state, relative to the Medicaid program, knowing such record or statement is false.

132. Tennessee's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Tennessee that it would not otherwise have paid and continues not to receive all monies and/or rebates as required by relevant law, rule and/or regulation.

133. The Tennessee Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a) that by reason of the aforementioned violations of the Tennessee Medicaid False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Tennessee has sustained because of Defendant's conduct, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of Tenn. Code Ann. § 71-5-181 *et seq.*;

-47-

(b) that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount

allowed pursuant to Tenn. Code Ann. § 71-5-181 *et seq.*, and/or any other applicable provision

of law;

(c) that Relators be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

(d) that Plaintiffs and Relators have such other and further relief as this Court

deems just and proper.

## COUNT TWENTY-ONE: VIOLATION OF THE
## TEXAS MEDICAID FRAUD PREVENTION STATUTE

134. Relators repeat and reallege each allegation contained in paragraphs 1 through 33

above as if fully set forth herein.

135. This is a State *qui tam* action brought by Relators for and on behalf of the State of

Texas and on behalf of themselves as individuals to recover treble damages and civil penalties

under the Texas Medicaid Fraud Prevention Statute, TX Hum. Res. § 36.001 *et seq.*

136. Defendant violated and continues to violate TX Hum. Res. § 36.001 *et seq.*, and

Medicare/Medicaid laws and regulations by doing all or any of the following within the State of

Texas:

(a) knowingly making or causing to be made a false statement or

misrepresentation of a material fact to the State of Texas or any of its administrative or political

subdivisions to permit a person to receive a benefit or payment under the Medicaid program that

is not authorized or that is greater than the benefit or payment that is authorized;

(b) knowingly concealing or failing to disclose information to the State of

Texas or any of its administrative or political subdivisions that permits a person to receive a

-48-

benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(c)     knowingly presenting or causing to be presented to the State of Texas or any of its administrative or political subdivisions a false claim for payment under the Medicaid program for a product provided or a service rendered; and/or

(d)     knowingly makes, uses, or causes the making or use of a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Texas or any of its administrative or political subdivisions under the Medicaid Program.

137.     Texas' Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Texas that it would not otherwise have paid and continues not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

138.     The State of Texas and the Texas Medicaid program have been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)     that by reason of the aforementioned violations of the Texas Medicaid Fraud Prevention Statute that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Texas has sustained because of Defendant's conduct, plus a civil penalty of not more than $15,000 for each violation of TX Hum. Res. § 36.001 *et seq.*;

(b)     that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount

allowed pursuant to TX Hum. Res. § 36.001 *et seq.*, and/or any other applicable provision of

law;

(c)     that Relators be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief as this Court

deems just and proper.

## COUNT TWENTY-TWO: VIOLATION OF THE
## VIRGINIA FRAUD AGAINST TAX PAYERS ACT

139.    Relators repeat and reallege each allegation contained in paragraphs 1 through 33

above as if fully set forth herein.

140.    This is a State *qui tam* action brought by Relators for and on behalf of the State of

Virginia and on behalf of themselves as individuals to recover treble damages and civil penalties

under the Virginia Fraud Against Taxpayers Act, VA Code Ann. § 8.01-216.1 *et seq.*

141.    Defendant violated and continues to violate VA Code Ann. § 8.01-216.1 *et seq.*,

and Medicare/Medicaid laws and regulations by doing all or any of the following within the

State of Virginia:

(a)     knowingly presenting, or causing to be presented, to an officer or

employee of the Commonwealth a false or fraudulent claim for payment or approval;

(b)     knowingly making, using, or causing to be made or used, a false record or

statement to get a false or fraudulent claim paid or approved by the Commonwealth;

(c)     knowingly making, using, or causing to be made or used, a false record or

statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the

Commonwealth; and/or

(d)     knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Commonwealth.

142.    Virginia's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the Commonwealth of Virginia that it would not otherwise have paid and continues not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

143.    The Commonwealth of Virginia and the Virginia Medicaid program have been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)     that by reason of the aforementioned violations of the Virginia Fraud Against Taxpayers Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Virginia has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of VA Code Ann. § 8.01-216.1 *et seq.*;

(b)     that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to VA Code Ann. § 8.01-216.1 *et seq.*, and/or any other applicable provision of law;

(c)     that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)     that Plaintiffs and Relators have such other and further relief that this Court deems just and proper.

## COUNT TWENTY-THREE: VIOLATION OF THE
## WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE ACT

144.    Relators repeat and reallege each allegation contained in paragraphs 1 through 33
above as if fully set forth herein.

145.    This is a State *qui tam* action brought by Relators for and on behalf of the State of
Wisconsin and on behalf of themselves as individuals to recover treble damages and civil
penalties under the Wisconsin False Claims for Medical Assistance Act, Wis. Code § 20.931 *et
seq.*

146.    Defendant violated and continue to violate Wis. Code § 20.931 *et seq.*, and
Medicare/Medicaid laws and regulations by doing all or any of the following within the State of
Wisconsin:

(a)     knowingly presenting or causing to be presented to any officer, employee,
or agent of this state a false claim for medical assistance;

(b)     knowingly making, using, or causing to be made or used a false record or
statement to obtain approval or payment of a false claim for medical assistance;

(c)     knowingly making, using, or causing to be made or used a false record or
statement to conceal, avoid, or decrease any obligation to pay or transmit money or property to
the Medical Assistance program; and/or

(d)     becoming a beneficiary of the submission of a false claim for medical
assistance to any officer, employee, or agent of this state, knowing that the claim is false, and
failing to disclose the false claim to this state within a reasonable time after becoming aware that
the claim is false.

147.    Wisconsin's Medicaid program was unaware of Defendant's wrongful conduct
regarding the concealment, falsity of the records, statements and claims made by Defendant and

as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the State of Wisconsin that it would not otherwise have paid and continues not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

148. The Wisconsin Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a) that by reason of the aforementioned violations of the Wisconsin False Claims for Medical Assistance Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that Wisconsin has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of Wis. Code § 20.931 *et seq.*;

(b) that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to Wis. Code § 20.931 *et seq.*, and/or any other applicable provision of law;

(c) that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d) that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

## COUNT TWENTY-FOUR: VIOLATION OF THE DISTRICT OF COLUMBIA FALSE CLAIMS ACT

149. Relators repeat and reallege each allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

150.    This is a State *qui tam* action brought by Relators for and on behalf of the District of Columbia and on behalf of themselves as individuals to recover treble damages and civil penalties under the District of Columbia False Claims Act, DC ST § 2-308.03 *et seq.*

151.    Defendant violated and continue to violate DC ST § 2-308.03 *et seq.*, and Medicare/Medicaid laws and regulations by doing all or any of the following within the District of Columbia:

(a)    knowingly presenting, or causing to be presented, to an officer or employee of the District a false claim for payment or approval;

(b)    knowingly making, using, or causing to be made or used, a false record or statement to get a false claim paid or approved by the District;

(c)    knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the District; and/or

(d)    becoming a beneficiary of an inadvertent submission of a false claim to the District, subsequently discovering the falsity of the claim, and failing to disclose the false claim to the District.

152.    The District of Columbia's Medicaid program was unaware of Defendant's wrongful conduct regarding the concealment, falsity of the records, statements and claims made by Defendant and as a result thereby has paid and continues to pay Medicaid reimbursement from, for or within the District of Columbia that it would not otherwise have paid and continues not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

153.    The District of Columbia Medicaid program has been damaged by Defendant's conduct, by the payment of false and fraudulent claims and by its failure not to receive all monies and/or rebates required by relevant law, rule and/or regulation.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(a)    that by reason of the aforementioned violations of the District of Columbia False Claims Act that this Court enter judgment in Plaintiffs' favor and against Defendant in an amount equal to not less than two times and not more than three times the amount of damages that the District of Columbia has sustained because of Defendant's conduct, plus a civil penalty of not more than $10,000 for each violation of DC ST § 2-308.03 *et seq.*;

(b)    that Relators, as *qui tam* Plaintiffs, be awarded the maximum amount allowed pursuant to DC ST § 2-308.03 *et seq.*, and/or any other applicable provision of law;

(c)    that Relators be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

(d)    that Plaintiffs and Relators have such other and further relief as this Court deems just and proper.

DATED: August \_\_ , 2009         Respectfully submitted,

KEIL & GOODSON
JOHN C. GOODSON
406 Walnut Street
Texarkana, Arkansas 71854
Telephone: (870) 772-4113
Facsimile: (870) 773-2967

By_____
    John C. Goodson

PACKARD, PACKARD & JOHNSON, PC
[LEAD COUNSEL]
LON D. PACKARD
CRAIG H. JOHNSON
2825 Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
Telephone: (801) 428.9000
Facsimile: (801) 428.9090

-55-

Ronald D. Packard
4 Main Street, Suite 200
Los Altos, California 94022
Telephone: (650) 947-7300
Facsimile: (650) 947-7301

LAW OFFICES OF JAMES M. PRATT, JR., P.A.
JAMES M. PRATT
144 Washington Street, N.W.
Camden, Arkansas 71702
Telephone: (870) 836-7328
Facsimile: (870) 837-2405

LAW OFFICES OF GEORGE L.
MCWILLIAMS, PC
GEORGE L. MCWILLIAMS
406 Walnut Street
Texarkana, Arkansas 71854
Telephone: (870) 772-2055
Facsimile: (870) 772-5013

Attorneys for Relators/Plaintiff

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: August __3__, 2009        Respectfully submitted,

KEIL & GOODSON
JOHN C. GOODSON
406 Walnut Street
Texarkana, Arkansas 71854
Telephone: (870) 772-4113
Facsimile: (870) 773-2967

By _____
    John C. Goodson

PACKARD, PACKARD & JOHNSON, PC
[LEAD COUNSEL]
LON D. PACKARD
CRAIG H. JOHNSON
2825 Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
Telephone: (801) 428.9000
Facsimile: (801) 428.9090

RONALD D. PACKARD
4 Main Street, Suite 200
Los Altos, CA 94022
Telephone: (650) 947-7300
Facsimile: (650) 947-7301

LAW OFFICES OF JAMES M. PRATT, JR., P.A.
JAMES M. PRATT
144 Washington Street, N.W.
Camden, Arkansas 71702
Telephone: (870) 836-7328
Facsimile: (870) 837-2405

LAW OFFICES OF GEORGE L. MCWILLIAMS, PC
GEORGE L. MCWILLIAMS
406 Walnut Street
Texarkana, AR 71854
Telephone: (870) 772-2055
Facsimile: (870) 772-0513

Attorneys for Relators/Plaintiff